IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TODD BERNIER, | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | 04 C 6924 |
| | ) | |
| MORNINGSTAR, INC., | ) | |
|    Defendant. | ) | |

## MEMORANDUM AND ORDER

In this action brought pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.*, plaintiff Todd Bernier contends that Morningstar, his former employer: (1) is liable for a co-worker's alleged sexual harassment; and (2) retaliated against him for complaining about the harassment. Morningstar's motion for summary judgment is before the court. For the following reasons, the motion is granted.

### I. Background

The following facts are drawn from the parties' Local Rule 56 submissions and are undisputed unless otherwise noted. Morningstar provides independent investment research. Bernier began his employment at Morningstar in November of 1999 as an equity analyst. In the summer of 2002, Morningstar promoted him to the position of associate director of equity research.

At all times during Bernier's employment with Morningstar, Morningstar maintained an anti-harassment policy that prohibited sexual harassment. This policy contained a complaint procedure that directed employees who believed that they were being harassed to "discuss it immediately with your manager or the human resources department." The policy also assured employees that, "[a]ll complaints will be taken seriously and will be formally investigated . . .

This complaint procedure is a critical component of Morningstar's efforts to maintain a workplace free of harassment. Employees are strongly urged to utilize it, and are assured that the company will not retaliate against them for doing so."

Morningstar employees also received other training materials, including a document entitled "Managing to Prevent Harassment – Participant's Guide." This document contained a hypothetical asking "To whom should an employee at your company complain about harassment?" The materials answered this question by stating, "Look at company's policy to determine the answer. The answer is not a co-worker or the harasser. Complaints to co-workers do not put the company on notice of the harassment. Complaints to the harasser are encouraged, but cannot be required."

Christopher Davis is a mutual fund analyst at Morningstar. Davis is homosexual. Bernier first learned of Davis' sexual orientation sometime in 2003 when he heard that Davis brought a male date to Morningstar's 2002 Christmas party. Unbeknownst to Bernier, some employees at Morningstar believed that Davis had a "lazy" left eye which can make it appear that Davis is"looking off at something" when he converses with his co-workers.

Bernier contends that in January of 2003, Davis began to stare at him when the two passed in the hallway or when Davis passed Bernier's work area. From January 2003 to January 2004, this occurred at least once per week. Bernier "just assumed" that Davis was sexually interested in him because other gay men that Bernier knows did not stare at him.

Davis' purported interest in Bernier culminated in an incident in the Morningstar men's room on January 23, 2004. On that day, Bernier and Davis were standing side by side at a urinal. According to Bernier, the "men's room code of conduct" governs this type of encounter and requires men answering the call of nature to "look straight ahead" and "even if you are

talking to someone, you look at their face and make it very obvious." Davis, however, "glared over" at Bernier, "kind of downward." Bernier believed that Davis was looking at his genitals.

Bernier decided to try to resolve the men's room incident himself to avoid a confrontation with Davis but nevertheless give Davis an opportunity to stop the alleged harassment without any repercussions from Morningstar. To this end, Bernier sent Davis an anonymous instant message from his computer at work stating, "Stop staring! The guys on the floor don't like it."

When the anonymous instant message popped up on Davis' computer screen, Davis was very surprised and upset because he felt that somebody was voicing anti-gay sentiments. He quickly told his manager, Emily Hall, and the co-workers who sat near him about the anonymous instant message. At Hall's suggestion, Davis contacted Janie Fitzpatrick, the human resources representative assigned to Davis' department. Fitzpatrick told Hall and Davis that she would investigate.

In an effort to find the source of the anonymous instant message, Fitzpatrick consulted Morningstar's network services director, Bill Howell. Howell told Fitzpatrick that the message had been sent from Bernier's computer. Fitzpatrick passed this information onto Pat Dorsey (the director of equity research) and his boss, Haywood Kelly (Morningstar's editor-in-chief). Fitzpatrick, Dorsey and Kelly subsequently met with Bernier. Fitzpatrick showed Bernier a copy of the instant message and asked him whether he had sent it or knew anything about it. It is undisputed that Bernier responded "no" to both questions and that his answers were not truthful. The parties disagree, however, as to whether Bernier tried to explain why he sent the instant message and whether the Morningstar employees thwarted him from doing so.

The following day, Fitzpatrick and Dorsey met again with Bernier and told him that he was being terminated for lying as well as for sending the instant message. Bernier contends that he then told Fitzpatrick and Dorsey about the incident in the men's room and his feeling that he was being "hit on." Dorsey testified that he did not believe Bernier because Bernier had waited until after he was terminated to make this allegation and Bernier had just lied to him about sending the instant message. Bernier subsequently filed a federal complaint asserting that Morningstar created a hostile work environment and retaliated against him after he complained about Davis' alleged harassment.

## II. Discussion

### A. Standard on a Motion for Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Moreover, a court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Valenti v. Qualex, Inc.*, 970 F.2d at 365; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

The determination as to what facts are "material" in employment discrimination cases depends upon the substantive law of employment discrimination, and the burden of proof applicable under the law. *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 922 (1988). When considering motions for summary judgment in discrimination cases, the court applies

these criteria with added rigor because the matters of intent and credibility are crucial issues. *See Sarsha v. Sears, Roebuck, & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993).

### B. Bernier's Sexual Harassment Claim

Morningstar contends that even if the court accepts Bernier's version of the facts (*i.e.*, that Davis harassed him by staring at him and violating the "men's room code of conduct"), there is no basis for imposing employer liability. In support, Morningstar correctly notes that it may raise an affirmative defense to a claim of harassment under Title VII by showing that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

This means that when a plaintiff claims that a co-worker harassed him, an employer can be liable only if it was negligent either in discovering or remedying the harassment. *Cerros v. Steel Technologies, Inc.*, 398 F.3d 944, 952-53 (7th Cir. 2005). An employer satisfies its legal duty in co-worker harassment cases if it takes reasonable steps to discover and address incidences of co-worker harassment. *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). Moreover, notice or knowledge by the employer of harassment is a prerequisite for liability. *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1035 (7th Cir. 1998). Thus, "a plaintiff cannot withstand summary judgment without presenting evidence that [he] gave the employer enough information to make a reasonable employer think there was some probability that [he] was being sexually harassed." *Zimmerman v. Cook County Sheriff's Dept.*, 96 F.3d 1017, 1018 (7th Cir. 1996).

Here, Morningstar maintained an anti-harassment policy and provided training to its employees regarding its policy and the complaint procedure, but Bernier did not bring the alleged harassment to his supervisor's attention until after he was in hot water for sending the anonymous email to Davis. Bernier nevertheless contends that Morningstar was on notice of Davis' alleged harassment from the moment it saw Bernier's instant message to Davis. According to Bernier, Morningstar should have known that the message ("Stop staring! The guys on the floor don't like it") was a complaint about Davis' harassment of Bernier.

The record, however, shows that the Morningstar employees who saw the message construed it as harassment of Davis on the basis of his sexual orientation and possibly also his eye condition. As noted above, to withstand summary judgment, an employee must point to evidence showing that he gave his employer enough information to make a reasonable employer think there was some probability that he was being sexually harassed. *See Zimmerman v. Cook County Sheriff's Dept.*, 96 F.3d at 1018. All Bernier has pointed to here is his own subjective interpretation of his instant message. The plain language of the message, on the other hand, supports the interpretation that Bernier was the harasser, not the harassee, and the evidence shows that Morningstar employees believed that Davis was the victim of harassment, not Bernier.

The only way Morningstar could have known otherwise is if Bernier had complained (which he didn't) or if Morningstar had known the context underlying the message. The only support for Bernier's belief that Morningstar was aware that Bernier thought he was being harassed is his speculation that it "must have known." This conjecture is not sufficient to withstand summary judgment. *See, e.g., Visser v. Packer Engineering Associates*, 924 F.2d 655,

659-60 (7th Cir. 1991). Bernier has thus failed to create a triable issue of fact as to whether Morningstar was negligent either in discovering or remedying the alleged harassment.

In the interests of completeness, the court also notes that after Davis reported the message (the act that Bernier contends should have placed Morningstar on notice that Davis had harassed Bernier), Morningstar did in fact conduct an investigation. Specifically, it is undisputed that Morningstar called Bernier in to ask him about the message and that Bernier lied when he was asked if he had sent it. As discussed above, an employer may be liable only if it negligently fails to take reasonable steps to discover or remedy harassment. *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 976 (7th Cir. 2004). An employer's response to alleged instances of employee harassment must be reasonably calculated to prevent further harassment under the particular facts and circumstances at the time the allegations are made. *Id.*

Here, Bernier did not complain about the alleged harassment until after he was in trouble for sending the instant message. At that point, Morningstar chose to believe Davis's interpretation of the message as opposed to Bernier's interpretation. Bernier has not pointed to any authority which requires an employer to accept allegations of harassment as true regardless of the surrounding circumstances. Moreover, this court cannot sit as a superpersonnel department and second guess Morningstar's position regarding the instant message. It is theoretically possible that Morningstar could have reacted differently, but in light of the wording of the message and Bernier's refusal to acknowledge that he had sent it, the court cannot find as a matter of law that Morningstar's actions were unreasonable.

In short, Morningstar was not on notice of the alleged harassment until Bernier told his supervisors about it. This occurred after he had been fired for sending the anonymous instant message to Davis. Accordingly, on the record presently before the court, Bernier has failed to

establish that Morningstar should have known about the alleged harassment any sooner or that its actions taken in response to Bernier's instant message were unreasonable. Morningstar is thus entitled to summary judgment as to Bernier's sexual harassment claim.

### C. Bernier's Retaliation Claim

Bernier also asserts that Morningstar terminated him because he complained about harassment by Davis. To state a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse action. *See, e.g., Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir. 1996). Bernier's retaliation claim fails as the court finds that Bernier's instant message was not statutorily protected expression.

In order to establish that he engaged in a protected activity, Bernier must satisfy subjective and objective tests. First, with respect to Bernier's subjective belief that he was harassed, he must demonstrate that he complained about an act that he "reasonably believed in good faith . . . violated Title VII." *See Fine v. Ryan International Airlines*, 305 F.3d 746, 752 (7th Cir. 2002). Since Bernier asserts that he thought that Davis' alleged staring constituted harassment, he satisfies this hurdle.

When viewed objectively, however, Bernier's conduct is more problematic. An employee's subjective belief that his supervisors should have known that the instant message was a complaint about sexual harassment, "by itself, will not create the factual dispute needed to ward off summary judgment." *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1008 n.9 (7th Cir. 2000) ("An employee can honestly believe [he] is the object of discrimination, but if [he] never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints"). Instead, an employee must show that he complained

about discrimination "because of" sex or gender. *Sitar v. Indiana Department of Transportation*, 344 F.3d 720 (7th Cir. 2003). An employee "need not use the magic words 'sex' or 'gender discrimination' to bring [his] speech within Title VII's retaliation protections" but he must "at least say something to indicate [his gender] is an issue." *Id.*

For example, in *Sitar*, an employee complained that she was "on pins and needles" and thought that her co-workers (who were all male) were not giving her a chance, but never told her supervisor that "sex discrimination was her real problem." *Id.* at 727-28. The Seventh Circuit held that the employee's failure to articulate her belief that she was the victim of sex discrimination doomed her retaliation claim. *Id.* Similarly, in *Miller*, the plaintiff complained about her pay and never mentioned pregnancy or related topics such as children or maternity leave. 203 F.3d at 1008. The Seventh Circuit affirmed the grant of summary judgment in favor of her employer, finding that the plaintiff had failed to produce "evidence from which it could reasonably be inferred that [her employer] more likely than not knew she was concerned about pregnancy discrimination." *Id.* (internal quotations omitted).

In the instant case, Bernier's instant message stated, "Stop staring! The guys on the floor don't like it." As in *Sitar* and *Miller*, this statement neither mentions sex-based discrimination nor objectively conveys the idea that Bernier felt that he was the victim of sexual harassment. Instead, it appears to be a complaint about Davis' sexual orientation. As such, it is insufficient to support an inference that Morningstar knew or should have known that Bernier was attempting to complain about sex-based discrimination.

This is especially true given that Bernier's so-called complaint about Davis' alleged harassment was made to Davis himself, as opposed to a Morningstar supervisor. Although Morningstar eventually found out about Bernier's subjective interpretation of his instant

message, by then, it had already decided to fire him for sending an inappropriate message to a fellow employee and then lying about it. For these reasons, Morningstar is entitled to summary judgment as to Bernier's retaliation claim.

## III. Conclusion

For the above reasons, Morningstar's motion for summary judgment [44-1] is granted. The clerk is directed to enter a Rule 58 judgment and to terminate this case.

DATE: January 31, 2006

Blanche M. Manning
United States District Judge